## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

-----------------------------------------------------

MARCIA D.HOLMES,                              :

    Plaintiff,                           :

v.                                            :

                                     **D.C. Superior Court**

FRIENDSHIP PUBLIC CHARTER         :  **Civil No:  1:06-cv-00019 RMU**
SCHOOL, INC. d/b/a FRIENDSHIP-
EDISON PUBLIC CHARTER SCHOOL  :
CARTER G. WOODSON CAMPUS and
EDISON SCHOOLS INC.,              :

    Defendants.                         :

------------------------------------------------------

### JOINT LCVR. 16.3(c) STATEMENT

Pursuant to Fed. R. Civ. P. 26(f), Local Rule 16.3(d), and the Court's March 28, 2005 Initial Scheduling Conference Order, plaintiff Marcia Holmes ("Holmes"), by counsel, The Temple Law Offices, and defendants, Friendship Public Charter School Inc. (improperly denominated in the Complaint) (hereinafter referred to as "Friendship") and Edison Schools Inc. ("Edison") (collectively referred to as "defendants"), by and through their attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP (collectively, the "parties"), respectfully submit their Joint LCvR 16.3 Statement.

Pursuant to LCvR 16.3, the parties met and conferred on February 22, 2006.

A.    **CASE FACTS & STATUTORY BASIS FOR CAUSES OF ACTION AND DEFENSES**

Ms. Holmes brings this lawsuit against the Defendants based on their wrongful termination of her employment in violation of her employment contract with Defendants, dated June 27, 2005, and in direct violation of the Family and Medical Leave Act ("FMLA"). On August 30, 2005, Ms. Holmes spoke with Mr. Anthony Battle and Mr. W. Henry at Defendant Friendship regarding her need to take leave under FMLA to care for her minor child, who suffers from Cerebral Palsy. On August 30, 2005, Ms. Holmes contacted Ms. Antonio Christine and requested an FMLA packet. On Saturday, September 3, 2005, Ms. Holmes received the requested FMLA packet in the mail. On September 7, 2005, without stating a basis or a reason for doing so, Defendants required Ms. Holmes to immediately leave the school and then placed her on leave. On that day, Defendants told Ms. Holmes they would contact her within twenty-four (24) hours to inform her as to why she was required to vacate the building or to inform her of the "next step." On September 12, 2005, after not hearing from Defendants, Ms. Holmes contacted Defendant Friendship. Defendant Friendship did not inform Ms. Holmes that her employment was terminated. They did, however, explain to Ms. Holmes that she still had full benefits and that she would receive full check on Friday. Relying on these statements. Ms. Holmes sent her completed FMLA request form to Defendant Edison, which they received on September 13, 2005. On September 13, 2005, Ms. Holmes sent her FMLA Notification Letter to Defendant Friendship, which it received that day at approximately 11.30 am. Upon receipt of Ms. Holmes' FMLA request form and notification letter, Defendants took actions to make it appear as if they had terminated her

employment retroactively and prior to receipt of her FMLA request form. On September 14, 2005, Ms. Holmes received an un-dated letter from Defendants terminating her employment as of September 12, 2005.

Defendants' defense is essentially three-fold. First, with regard to plaintiff's termination, there were obvious and ongoing serious performance deficiencies and problems that are amply documented in Ms. Holmes' personnel file and her discharge was fully warranted. In that regard, plaintiff was counseled both verbally and in writing regarding serious performance deficiencies. These deficiencies were exhibited in multiple core areas of Ms. Holmes' basic job responsibilities. As a result of these deficiencies, plaintiff was placed on probation in May 2005 and was monitored (on May 19, 2005, Ms. Holmes acknowledged receipt of the written probation notice). At that time, she was advised that the failure to improve performance would result in further disciplinary action up to and including termination. Thereafter, Ms. Holmes' performance did not improve and these ongoing problems are further documented in a Memorandum dated September 8, 2005 from Michael Cordell, Upper School Principal. At that time, she was suspended from Friendship's employment. The personnel file further reflects that Ms. Holmes' employment was terminated effective September 12, 2005 (by letter sent September 13, 2005 and delivered to her at home by Federal Express on September 14, 2005).

Second, with respect to the discharge, Ms. Holmes' employment contract provides in Paragraph 7 that an employee's employment may be terminated at any time by the school "by reason of unsatisfactory performance, misconduct, or conduct unbecoming an employee or tending to bring disrepute upon the school or upon Edison."

In any event, Ms. Holmes was an at-will employee, whose employment could be terminated *without cause*.

Third, defendants will defend on the grounds that the determination to terminate plaintiff's employment was made by Friendship before any written FMLA leave application was received by Edison. The letter from Friendship (sent from Washington, D.C.) terminating plaintiff's employment "crossed in the mail" with plaintiff's submission of FMLA paperwork to Edison's New York Office. Moreover, the decision-makers at Friendship who participated in the decision to terminate plaintiff's employment (who were located in Washington D.C.) were not aware that plaintiff had submitted a request for FMLA leave.[1]

**B.     RULE 16.3 (C) MATTERS**

1. **Whether the case is likely to be disposed of by dispositive motion; and whether, if a disposition motion has already been filed, the parties should recommend to the court that discovery or other matter should await a decision on the motion.**

   Plaintiff's position is that this case cannot be disposed of by dispositive motion prior to engaging in discovery.

   Defendants' position on this issue is that a Motion for Summary Judgment will dispose of this case in its entirety since the determination to terminate plaintiff's employment was made by Friendship before any written FMLA leave application was received by Edison. Moreover, the decision-makers at Friendship who participated in the decision to terminate plaintiff's employment (who were located in Washington D.C.) were not aware that plaintiff had submitted a request for FMLA leave.

2. **The date by which any other parties shall be joined or the pleading amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

   Plaintiff would request an opportunity to amend the pleadings or join parties within three (3) months of entry of the Scheduling Order.

---

[1] Defendants do not concede that plaintiff was eligible for or denied FMLA leave or that she complied with the appropriate policies or procedures required by Edison to qualify for or obtain leave.

Defendants believe that all parties have been joined and defendants do not anticipate the need to amend the pleadings.

**3.  Whether the case should be assigned to a magistrate Judge for all purposes, including trial.**

Plaintiff would consent to assignment to a magistrate judge for discovery purposes only.

Defendants respectfully decline the invitation to refer this case to a magistrate judge.

**4.  Whether there is a realistic possibility of settling the case.**

The parties have been engaged in preliminary negotiations to determine whether a settlement is possible.  Counsel for the parties are currently discussing a possible economic resolution.

**5.  Whether the case should benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.  In assessing the above counsel shall consider:**

**(i)    The client's goals in bringing or defending the litigation;**

**(ii)   Whether settlement talks have already occurred and, if so, why they did not produce an agreement.**

**(iii)  The point during litigation when ADR would be most appropriate, with special consideration given to:**

**(a) Whether ADR should take place after the informal exchange or production through discovery of specific items of information; and**

**(b) Whether ADR should take place before or after the judicial resolution of key legal issues;**

**(i)    Whether the parties would benefit from a neutral evaluation of their case, which could include suggestions regarding the focus of discovery, the legal merits of the claim, and assessment of damages and/or the potential settlement value of the case; and**

**(ii)   whether cost savings or any other practical advantages would flow from a stay of discovery or of other pre-trial proceedings while an ADR process is pending.**

The parties respectfully believe that this case could benefit from this Court's ADR program or an independent mediator.

1. **Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for decision on the motions.**

   Subject to Plaintiff's belief that discovery should close on September 1, 2006 as noted at footnote 2, *infra*, the parties believe that Summary Judgment Motions should be due on January 15, 2007. *See* also defendants' response to Number 1, *supra*. *See* Proposed Discovery Plan, *infra*.

2. **Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26 (a)(1), F.R.Civ.P., and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

   The parties jointly agree to dispense with the initial disclosure requirements set forth in Rule 26(a)(1).

3. **The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, request for admissions, and depositions.**

   At present, written discovery is in the process of being exchanged. Based on the number of potential witnesses and the need to obtain medical and educational records of plaintiff's daughter, the parties request at least eight (8) months to conduct general discovery, with designation of experts and requests for admissions.[2]

4. **Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2) F.R.Civ.P., should be modified, and whether and when depositions of experts should occur.**

   It is the parties' position in this matter that expert testimony will likely be required and believe that depositions of experts should occur after the completion of general fact discovery.

5. **In class actions, appropriate procedures for dealing with Rule 23 proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

   Not applicable.

---

[2] Plaintiffs feel discovery should close on September 1, 2006.

6. **Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

At this point, the parties do not believe that bifurcation is necessary in this matter.

7. **The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

The parties propose March 1, 2007 for the pretrial conference. *See* Proposed Discovery Plan, *infra*.

8. **Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

The parties agree that the court should set the trial date 30-60 days after the pretrial conference. *See* Proposed Discovery Plan*, infra*.

9. **Such other matters that the parties believe may be appropriate for the inclusion in a scheduling order.**

None at this time.

A. **MAKE OR ARRANGE FOR DISCLOSURES REQUIRED BY RULE 26(A)(1), F.R.CIV.P.**

Not applicable. The parties have agreed to waive Rule 26(a)(1) disclosures.

B. **DEVELOP A DISCOVERY PLAN THAT INDICATES THE PARTIES' VIEWS AND PROPOSALS**

| Discovery Event | Date |
|---|---|
| Plaintiff to Designate Experts | June 30, 2006 |
| Defendants to Designate Experts | August 15, 2006 |
| Completion of Expert Discovery | October 1, 2006 |
| All Discovery Closes | November 1, 2006 |
| Requests for Admission Due | November 15, 2006 |
| Dispositive Motions Due | January 15, 2007 |
| Pretrial Conference | To be scheduled by the Court |
| Trial Start Date | To be set by the Court |

Respectfully submitted,


By:_____/s/_____
Donald Temple, Esquire (DC Bar No. 408749)
Johnnie Bond, Jr. Esquire (admission pending)
Donald M. Temple, PC
1229 15th Street, N.W.
Washington, DC  20005
*Counsel for Plaintiff*

  and

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP




By:_____/s/_____
Laura N. Steel, Esquire (DC Bar No. 367174)
1341 G Street, N.W.
Suite 500
Washington, DC 20005
Phone: 202-626-7660
Telefax: 202-628-3606
Email: Laura.steel@wilsonelser.com

*Counsel for Defendants Edison Schools Inc. and*
*Friendship Public Charter School Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of JOINT LCVR. 16.3(c) STATEMENT was served, via electronic filing and first class mail on the 22nd day of February 2006, to:

Donald M. Temple, PC
1229 15th Street, N.W.
Washington, DC  20005


_____/s/_____
Laura N. Steel